**EQUIBANK, a Pennsylvania Banking Corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America INTERNAL REVENUE SERVICE, Defendant-Appellee.**

No. 83–3587.

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1985.

Roy C. Cheatwood, New Orleans, La., for plaintiff-appellant.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, William S. Estabrook, Libero Marinelli, Jr., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before RUBIN, POLITZ and GARWOOD, Circuit Judges.

POLITZ, Circuit Judge:

Equibank appeals the denial of a petition for injunction against the Internal Revenue Service which removed certain chandeliers from a house subject to an Equibank mortgage. Concluding that under controlling provisions of the Louisiana Civil Code the chandeliers are component parts of the house and, as such, are subject to the priming mortgage of Equibank, we reverse.

## Facts

Norman L. Johnson and Gayfred Dorthea McNabb Johnson owned a fine home, appropriately called a mansion, on St. Charles Avenue in New Orleans, Louisiana. Equibank held a mortgage on the house, primed by a first mortgage in favor of Hibernia National Bank. The Johnsons defaulted on the mortgages and failed to pay their income taxes. The IRS made jeopardy assessments, secured a lien and served notices of levy and seizure of the residence. Hibernia brought a foreclosure action and Equibank intervened. The Louisiana state court ordered the foreclosure of both mortgages and the sale of the property to satisfy the mortgage indebtednesses. The mortgages primed the IRS lien.

Prior to the auction sale ordered by the court, with the consent of the Johnsons the IRS took physical possession of the residence. The house was valued at $3,000,000 and the contents had an approximate value of $1,500,000 at the time of the seizure. The interior house lighting included several valuable antique crystal chandeliers.

The IRS removed and stored the contents of the house, including the furniture, fixtures, appliances and decorations. The IRS took the chandeliers, some valued as high as $75,000, and other light fixtures. In order to remove these electrical units, it was necessary to disconnect the internal house wiring from the wiring of the chandeliers and other fixtures. This disconnect took place in electrical workboxes located inside the ceiling and within the walls. In addition, the bolts and other fasteners securing the chandeliers and fixtures were taken off and the units were lowered to the floor. Upon completion of the removal, the workboxes containing the internal house wiring were exposed along with the holes made by the securing connectors. Persons effecting the safe removal had to have sufficient knowledge of electricity and electrical wiring to separate the internal wires from the unit wires without risking harm to the worker, or damage to the house and fixtures by the touching of exposed wires or the "shorting-out" of the circuitry. This type removal is not comparable to the simple and ordinary unplugging of a lamp or other electrical appliance from a wall socket. The latter requires little knowledge of the mysteries and vagaries of electricity, and involves minimal risk absent abuse.

Equibank filed a state court injunctive action seeking the return of the chandeliers. The IRS removed the suit to federal court. After hearing the district court denied the injunction requested, based on a finding that the chandeliers were not component parts of the residence and were thus not covered by Equibank's mortgage.

## Analysis

Whether the chandeliers were component parts of the Johnson residence or separate movables depends upon the interpretation of articles in the 1978 revision of Book 2 of the Louisiana Civil Code. As is usually the case in civilian interpretative methodology, several articles are to be considered in *pari materia* [1] but the critical codical provision is article 466 which states:

---

1. The pertinent articles include:

   Art. 462. Tracts of land, with their component parts, are immovables.

   Art. 463. Buildings, other constructions permanently attached to the ground, standing timber, and unharvested crops or ungathered fruits of trees, are component parts of a tract of land when they belong to the owner of the ground.

   Art. 464. Buildings and standing timber are separate immovables when they belong to a person other than the owner of the ground.

   Art. 465. Things incorporated into a tract of land, a building, or other construction, so as

Things permanently attached to a building or other construction, such as plumbing, heating, cooling, electrical or other installations, are its component parts. Things are considered permanently attached if they cannot be removed without substantial damage to themselves or to the immovable to which they are attached.

Professor A.N. Yiannopoulos, the official reporter for the Louisiana State Law Institute's revision of Book 2 of the Civil Code, called as an expert witness by the IRS, gave testimony about the history of the revision of those articles and of his opinion as to their meaning, with particular emphasis on article 466. The professor was of the opinion that under article 466 items are component parts of a building or other construction: (1) if they fit within one of the categories listed in the first paragraph of the article, in which event they are considered permanently attached as a matter of law, or (2) if they are actually permanently attached as described in the second paragraph. He stated:

> The first paragraph considers, are meant to consider these things as component parts as a matter of law as to which the test of permanent attachment would be immaterial.
>
> *     *     *     *     *     *
>
> I would consider these things as a matter of law being component parts ... you do not need to worry about the test of damage to themselves or to the building as to things covered by 466, first paragraph. These are component parts even if their

removal would not cause damage to the building or to themselves.

To complete the discussion, the professor testified that the second paragraph of article 466 covered items other than those listed in the first paragraph. A second paragraph item was to be considered a component part only if its removal occasioned substantial damage to itself or to the immovable to which it was attached. Professor Yiannopoulos concluded by expressing his opinion that the chandeliers were not component parts of the Johnson residence, although he was of the view that an electrical hot water heater would be so classified. He explained the difference by referring to societal expectation:

> We are talking about [what] an ordinary man who purchases a house with ordinary prudence ought to know and ought to expect. We are talking about what ideas prevail in society today with respect to an ordinary buyer of ordinary prudence. Or an ordinary mortgagor or an ordinary mortgagee of ordinary prudence. It is an objective test rather than a subjective test.

The Louisiana Legislature did not define or otherwise describe an electrical installation when it enacted article 466 in 1978. We find no post-1978 jurisprudence addressing the issue. The Expose des Motifs and history of the predecessor articles, however, lend some guidance to today's interpretative task.

Prior to the 1978 revisions to Book 2, articles 467 and 469 governed the inquiry

---

to become an integral part of it, such as building materials, are its component parts.
**Art. 466.** Things permanently attached to a building or other construction, such as plumbing, heating, cooling, electrical or other installations, are its component parts.
Things are considered permanently attached if they cannot be removed without substantial damage to themselves or to the immovable to which they are attached.
**Art. 467.** The owner of an immovable may declare that machinery, appliances, and equipment owned by him and placed on the immovable, other than his private residence, for its service and improvement are deemed to be its component parts. The declaration

shall be filed for registry in the conveyance records of the parish in which the immovable is located.
**Art. 468.** Component parts of an immovable so damaged or deteriorated that they can no longer serve the use of lands or buildings are deimmobilized.
The owner may deimmobilize the component parts of an immovable by an act translative of ownership and delivery to acquirers in good faith.
In the absence of rights of third persons, the owner may deimmobilize things by detachment or removal.
**Art. 469.** The transfer or encumbrance of an immovable includes its component parts.

whether a particular item was a component part of a building.[2] Former article 467 declared that wire screens, water pipes, gas pipes, sewerage pipes, heating pipes, radiators, electric wires, electric and gas lighting fixtures, bathtubs, lavatories, closets, sinks, gasplants, meters and electric light plants, heating plants and furnaces were immovables when actually connected or attached to the building. Albert Tate, Jr., a civilian scholar, then an intermediate appellate court judge, later a justice of the Louisiana Supreme Court and now a member of this court, expressed the view that the 1912 Legislature amended article 467, vastly expanding the items specifically covered, to overrule decisions of the Louisiana courts classifying items such as chandeliers as movable despite the fact that society considered such items integral parts of buildings. *LaFleur v. Foret*, 213 So.2d 141 (La.App.1968). The Expose des Motifs notes the position of societal views in the determination of items which compose component parts of a building, observing that

Lines of demarcation [between movables and immovables] are ordinarily drawn in accordance with prevailing ideas in society ... In contemporary civil law, the distinction rests, in principle, on physical notions of mobility and on "inherent" characteristics of things.

Thus, the views of the public on which items are ordinarily regarded as part of a building must be considered in defining those items which the legislature meant to include within the term electrical installation. *See also* Yiannopoulos, *Property* 2 LOUISIANA CIVIL LAW TREATISE § 22 (1980).

In this technological age many electrical units are designed for connection to the electrical power source by persons with little or no knowledge of electricity. This is accomplished by the simple expedient of inserting a male plug into a female socket. The electrical unit can be disconnected just as readily by simply pulling the plug out of the socket. Such items are legion: table and floor lamps, toasters, can openers, blenders, drills, soldering irons, mixers, knife sharpeners, radios, television sets, record players, stereo units, and on, and on *ad infinitum.* We are persuaded that these units, in the eyes of society, are movable; they are not electrical installations. They are not fixed in place. No special knowledge or expertise is needed to engage or disengage the electrical power source. They do not constitute component parts of the building or other construction in which they are found.

Other electrical units do not access the electric energy source through the plug arrangement but are "permanently" connected to the interior wiring of the building or other construction. The connection and disconnection from the power source poses a danger to the untutored or unskilled and requires knowledge of electricity and of electrical wiring. Such items include built-in stoves or ovens, wall and ceiling electric heaters, central heating and air conditioning, heat pumps, electrical hot water heaters, built-in public address and alarm systems, overhead fans, interior, physically attached light fixtures, exterior lighting, automatic garage door controls, and like electrical equipment. We are persuaded that these electrical units, from the societal viewpoint, are not movable; they are electrical installations which become a component part of the building or construction to which they are attached.

2. The text of the prior articles read:
**Art. 467.** Wire screens, water pipes, gas pipes, sewerage pipes, heating pipes, radiators, electric wires, electric and gas lighting fixtures, bathtubs, lavatories, closets, sinks, gasplants, meters and electric light plants, heating plants and furnaces, when actually connected with or attached to the building by the owner for the use or convenience of the building are immovable by their nature.

**Art. 469.** The owner is supposed to have attached to his tenement or building forever such movables as are affixed to the same with plaster, or mortar, or such as can not be taken off without being broken or injured, or without breaking or injuring the part of the building to which they are attached.

From the foregoing we conclude that a lamp which is simply plugged into a socket is a movable and may be removed from a residence without violating the mortgage, but an installed light fixture, be it an expensive, antique chandelier or a garden-variety fixture, becomes a component part of the building.

The ordinary view of society being a relevant consideration, we conclude our consideration by asking the near-rhetorical question: Does the average, ordinary, prudent person buying a home expect the light fixtures to be there when he or she arrives to take possession? Does that person expect the room to become illuminated when the light switch is thrown or should that person reasonably expect no response to the switch and, upon looking up, reasonably expect to see only a hole in the ceiling with the interior house wiring sticking out of the electrical workbox? In our view, the societal expectation is to have the lights go on. We therefore conclude that the Louisiana Legislature intended that the physically attached light fixtures were electrical installations and, as such, were component parts of the residence, thus respecting what "everybody knows" about which items "go with the house." *See* Simonett, "The Common Law of Morrison County," 49 ABAJ 203 (March 1963).

The chandeliers are electrical installations. They are component parts of the Johnson residence despite the fact that they could be removed without damage to the chandeliers or the residence. They are subject to Equibank's mortgage.

The judgment of the district court is REVERSED and the matter is remanded for entry of a judgment consistent herewith.