576 So.2d 1094 (1991)
LAKESIDE NATIONAL BANK OF LAKE CHARLES, Plaintiff-Appellee,
v.
Rose Marie David MOREAUX, Defendant-Appellant.
No. 89-1069.
Court of Appeal of Louisiana, Third Circuit.
March 13, 1991.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Stephen Polito, Lake Charles, for plaintiff/appellee.
Donald R. Jory, Jennings, for defendant/appellant.
Before STOKER, YELVERTON and KING, JJ.
STOKER, Judge.
The issue in this case is whether a landowner is entitled to removal from her property of a septic tank with field lines and underground air-conditioning system pipes which belong to an adjoining landowner.
Rose Moreaux sold to her son, Lester Moreaux, one acre from a 34.5-acre tract. Lester Moreaux built a residence on his one-acre tract which was financed by Lakeside National Bank of Lake Charles (LNB). The LNB loan was secured by a mortgage on the one-acre tract. Lester Moreaux installed *1095 a tin barn, a septic tank with field lines and underground air-conditioning system pipes on Rose Moreaux's property. A corner of the house also encroached about two feet onto Rose Moreaux's property.
When the house was 90% completed, Lester Moreaux filed for bankruptcy. He initially reaffirmed his debt to LNB, made two payments, then ceased paying and moved out of state. LNB foreclosed on its mortgage and the house and property were sold to LNB at the sheriff's sale.
Prior to purchasing the property at the sheriff's sale, LNB had a survey made of the property. The survey revealed the encroachments on Rose Moreaux's property. See Appendix I. Thus, prior to purchasing the property, LNB was aware of the encroachment problem.
After acquiring the property at the sheriff's sale, LNB filed suit against Rose Moreaux to acquire predial servitudes on her property to accommodate the encroachments. (LNB voluntarily removed the tin barn prior to filing suit, so it was not an issue at trial.) Rose Moreaux answered the petition asking for removal of the encroachments, contending that she had complained of them to the surveyor when he made her aware of them. She asked, in the alternative, for damages in the event the house was permitted to remain.
The trial court granted predial servitudes on Rose Moreaux's property to permit the house, septic tank and its field lines and air-conditioning system pipes to remain on her property. The court also granted an additional ten feet along the south side of the house for purposes of maintenance. Rose Moreaux was awarded $1,105.96 as compensation for the servitudes.
Rose Moreaux appeals the judgment. We affirm.

OPINION
On appeal, Rose Moreaux contends the trial court erred in granting LNB servitudes for the septic tank and its field lines, the air-conditioning system pipes and the ten-foot "maintenance" area south of the residence.

MAINTENANCE AREA
The trial court granted LNB a ten-foot servitude along the south side of the house for maintenance purposes. This court recognized in Bushnell v. Artis, 445 So.2d 152 (La.App. 3d Cir.1984), that it is proper to grant the dominant estate a servitude in order to allow room to maintain and repair a building and keep weeds from the building. The court in Bushnell granted a three-foot servitude along one side of the house for maintenance purposes. We hold the trial court did not err in granting a servitude along the south side of the house for maintenance purposes.
At oral argument counsel for the defendant-landowner conceded that plaintiff was entitled to a servitude for the area covered by the residence building. However, he contended that the ten-foot servitude for maintenance was beyond plaintiff's needs. Counsel for plaintiff conceded that six feet would serve the purpose of maintenance. Accordingly, we will reduce the servitude along the south side of the house to six feet.

SEPTIC TANK, FIELD LINES AND AIR-CONDITIONER PIPES
Defendant-appellant contends the trial court erred in granting predial servitudes on her property, under LSA-C.C. art. 670, to accommodate the septic tank, field lines and air-conditioner pipes running from the house on LNB's property. She argues that LSA-C.C. art. 670 is applicable only to buildings and that these things are not buildings.
LNB argues that the septic tank, the field lines and the air-conditioner cooling pipes are component parts of the house, under LSA-C.C. art. 466. LNB also argues that it is economically unfeasible to move these things (though possible) and that it would be inequitable to order their removal.
LSA-C.C. art. 670 provides:
"Art. 670. Encroaching building
"When a landowner constructs in good faith a building that encroaches on an *1096 adjacent estate and the owner of that estate does not complain within a reasonable time after he knew or should have known of the encroachment, or in any event complains only after the construction is substantially completed the court may allow the building to remain. The owner of the building acquires a predial servitude on the land occupied by the building upon payment of compensation for the value of the servitude taken and for any other damage that the neighbor has suffered."
The trial court ruled that LNB was in good faith with respect to its acquisition of the property burdened with encroachments. The appellant does not contest the trial court's finding of good faith, and the appellant does not contest the amount awarded to her as compensation for the servitudes. The sole issue addressed by the appellant is whether the septic tank system and the air-conditioning system may be considered as component parts of the building on the property acquired by LNB in the sheriff's sale.
The trial court properly applied LSA-C.C. art. 670 if the two systems in question are component parts of the building. Considering the functions of the two systems and their service relationship to the residence building, we find them to be component parts of the residence building. LSA-C.C. arts. 465 and 466[1]; Central Oil & Supply Corp. v. Wilson Oil Co., Inc., 511 So.2d 19 (La.App. 3d Cir.1987), writ denied, 535 So.2d 747 (La.1989). See also LSA-C.C. art. 469.
LSA-C.C. art. 465 as enacted in 1978 provides:
"Art. 465. Things incorporated into an immovable
"Things incorporated into a tract of land, a building, or other construction, so as to become an integral part of it, such as building materials, are its component parts."
LSA-C.C. art. 466 as enacted in 1978 provides:
"Art. 466. Component parts of buildings or other constructions
"Things permanently attached to a building or other construction, such as plumbing, heating, cooling, electrical or other installations, are its component parts.
"Things are considered permanently attached if they cannot be removed without substantial damage to themselves or to the immovable to which they are attached."
See the 1978 Revision Comments under these two articles.
Within the meaning of Civil Code Articles 465 and 466 cited above, the two systems are things permanently incorporated into the residence building so as to become an integral part of it. Moreover, we think that the question of whether such things as septic tank systems and air-conditioning systems should be considered an integral component of the building they serve should be based on societal expectations, notions and needs of the times. American Bank & Trust Co. v. Shel-Boze, Inc., 527 So.2d 1052 (La.App. 1st Cir.), writ denied, 532 So.2d 155 (La.1988); P.H.A.C. Services, Inc. v. Seaways Intern., Inc., 393 So.2d 117 (La.App. 1st Cir.1980), affirmed, 403 So.2d 1199 (La.1981); Ellis v. Dillon, 345 So.2d 1241 (La.App. 1st Cir.1977) and Benoit v. Acadia Fuel & Oil Distributors, Inc., 315 So.2d 842 (La.App. 3d Cir.), writ refused, 320 So.2d 550 (La.1975).

CONCLUSION
Accordingly, we affirm the judgment of the trial court awarding to Lakeside National Bank of Lake Charles and its successors in title a servitude on the property of Rose Moreaux along the south side of the residence which is described with particularity on the attached plat of survey and *1097 which is situated in the Parish of Jefferson Davis, State of Louisiana, to wit:
"Commencing at a point 300 feet West of the Northeast corner of Tract 1 of Plat of Survey of South Half of Northeast Quarter (S/2 of NE/4) of Section Twenty-Four (24), Township Ten (10) South, Range Six (6) West, Jefferson Davis Parish, Louisiana; thence West along the North line of said South Half (S/2), 230.84 feet; thence South parallel to the East line of said South Half (S/2), 188.7 feet; thence East parallel to said North line, 230.84 feet; thence North parallel to said East line, 188.7 feet to the point of commencement, containing one (1) acre."
We modify the judgment of the trial court to reduce the width of the servitude along the south side of the residence to six feet. With this modification the judgment of the trial court is affirmed in all other respects.
The costs of this appeal are assessed equally to appellant and appellee.
MODIFIED AND AFFIRMED AS MODIFIED.
KING, J., dissents for the written reasons assigned.
KING, Judge, dissenting.
I respectfully dissent because I do not find that Lakeside National Bank (hereinafter LNB) has met the burden of proof required by La.C.C. Art. 670.
La.C.C. Art. 670 states that:
"When a landowner constructs in good faith a building that encroaches on an adjacent estate and the owner of that estate does not complain within a reasonable time after he knew or should have known of the encroachment, or in any event complains only after the construction is substantially completed the court may allow the building to remain. The owner of the building acquires a predial servitude on the land occupied by the building upon payment of compensation for the value of the servitude taken and for any other damage that the neighbor has suffered." (Emphasis added.)
LNB alleged in its petition that, under La.C.C. Art. 670, it was entitled to a servitude for the building it owned because Lester Moreaux (hereinafter Moreaux), the landowner and LNB's ancestor in title, constructed the building in good faith on an adjacent estate belonging to Rose Moreaux (hereinafter defendant), who knew and consented and gave permission to Moreaux to build the building on her property. This allegation was specifically denied by defendant in her answer to LNB's petition.
La.C.C. Art. 670 set forth two specific requirements which must both be proven before a servitude can be granted under this article. First, it must be proven that the landowner constructed a building in good faith on an adjacent estate, that is, the landowner did not know that he was encroaching or that he thought he had the permission of the adjacent landowner to construct the encroaching building. Second, it must be proven that the owner of the adjacent estate, on which the encroaching building was constructed, did not complain within a reasonable time after he knew or should have known of the encroaching building or that the adjacent landowner complained only after the construction of the encroaching building was substantially completed.
A review of the record of the trial of this matter shows that LNB presented no proof or evidence whatsoever as to either Lester Moreaux's good faith in constructing the encroaching building on defendant's property or that defendant knew or consented and gave permission for the encroaching building to be constructed on her property. The record is also barren of any evidence that defendant did not complain to Lester Moreaux within a reasonable time after she knew or should have known of the encroaching building or until after substantial completion of the encroaching building. In fact, the record reflects that defendant, in her answer, specifically and affirmatively denied such allegations in plaintiff's petition. It is axiomatic, under Louisiana law, that a plaintiff bears the burden of proving his case by a preponderance of the evidence. Predial servitudes are real obligations created by alienating to one person *1098 the immovable property and to another person some real right to be exercised on the property. 4 La.Civ. Law Treat. Predial Servitudes, Yiannapoulos, § 1. Since a legal servitude is a limitation on ownership established by law, La.C.C. Art. 659, the law establishing such a legal servitude should be strictly construed.
The literal wording of La.C.C. Art. 670 only provides that the servitude is to be granted to a landowner who constructs in good faith a building on an adjacent estate. The evidence is clear that LNB was not the landowner who constructed in good faith a building on an adjacent estate. This codal article does not provide that a successor in title is entitled to such a legal servitude. However, even if it is argued that a successor in title might have such a legal right, the successor could have no greater legal right than his ancestor in title. I submit, even if it could be argued that a successor in title occupies the same legal position as its ancestor in title, that of the landowner who constructed the building on the adjacent estate, it would still be incumbent upon the successor in title to prove what the original landowner who constructed the building would have to prove, that is, that the landowner who constructed the building on the adjacent estate did so in good faith and that the owner of the adjacent estate did not complain within a reasonable time after he knew or should have known of the encroaching building or until after substantial completion of the encroaching building. Nowhere in this record is there any evidence whatsoever that Lester Moreaux constructed in good faith the building that encroaches on defendant's adjacent estate or any evidence whatsoever that defendant did not complain within a reasonable time after she knew or should have known of the encroaching building or until after substantial completion of the encroaching building.
The evidence in the record further shows that the exact location of the underground encroachments, consisting of the septic tank, sewer lines, field lines for the septic tank, and the air conditioning lines were not specifically located on defendant's property by the surveyor. The surveyor testified that these encroachments were all buried underground and that he only approximated their location on his survey plat, from information furnished to him by unknown parties, and that he made no effort to actually locate these encroachments by either probing for or digging to determine their exact location. Based on the evidence in the record, it is also impossible to determine the exact location of these encroachments in order for the court to grant and fix a boundary for any servitude for these underground encroachments.
For these reasons, I believe that the judgment of the trial court granting LNB a servitude, under the facts of this case, should be reversed because LNB was not legally entitled to seek such a servitude or, even if it was, that LNB did not meet its burden of proving that the landowner constructed in good faith an encroaching building on an adjacent estate and that the adjacent owner did not timely complain or complained only after the encroaching building was substantially completed, and did not prove the exact location of the encroachments for which it sought a servitude.
I also dissent because I believe the majority has improvidently extended Art. 670 beyond what the legislature intended. The historical, legislative and jurisprudential history of Art. 670, which is entirely new law, only indicates that it was intended to correct an inequitable problem, that of a good faith mistake of constructing a building on or slightly over a property line.
The majority finds, in this case, that such items as an underground septic tank, sewer line, field lines, and air conditioning lines have become part of the building because they are permanently attached to the building. I do not believe that it was the intent of our legislature, in adopting La.C.C. Art. 670, to allow for the acquisition of a servitude for things which were not in fact an integral and component part of the building itself, that is within the walls of the building itself. If, by the mere permanent attachment of a thing to an encroaching building, it suddenly becomes a component part of the encroaching building, entitling *1099 the thing to a servitude across an adjacent estate, such a servitude for the thing could be acquired without title, without destination of the owner, or without acquisitive prescription in contravention of the specific laws regulating the creation of servitudes.
Underground septic tanks, sewer lines, field lines, and air conditioning lines are certainly nonapparent. La.C.C. Art. 739 provides that a nonapparent servitude can only be acquired by title. However, the majority, by concluding that since these underground things are permanently attached to the encroaching building and have become a part of the building itself, entitling the owner of the building to a servitude for these things, have jurisprudentially created a nonapparent servitude without title. The majority's holding in this case, in effect, jurisprudentially allows for acquisition of a nonapparent servitude without title in direct contravention of the provisions of La.C.C. Art. 739. The same reasoning of the majority would also allow for acquisition of instantaneous apparent servitudes, such as for electric and telephone lines above ground, by merely permanently attaching them to an encroaching building, where such a servitude could ordinarily only be acquired without title by acquisitive prescription of thirty years. See La.C.C. Art. 742. The holding of the majority would, in effect, where there is an encroaching building built in good faith on an adjacent estate, to which encroaching building is permanently attached electric lines, telephone lines, water lines, gas lines, sewer lines, etc., jurisprudentially provide for a method of acquiring servitudes in direct contravention of specific statutory law. I do not believe the legislature intended this result in enacting La.C.C. Art. 670.
For these reasons, I respectfully dissent.
NOTES
[1] These articles of the Louisiana Civil Code are the current articles as numbered in the revision and reenactments of certain Civil Code articles by La.Acts 1978, No. 728, § 1. Certain cases in the jurisprudence cited in this opinion refer to Civil Code article numbers as they were numbered prior to the effective date of the 1978 revision. The principles and concepts discussed in these cases are nevertheless valid.