Jerry L. MILLER

v.

SLAM OFFSHORE, et al.

Civil Action Nos. 96–1390, 96–1568.

United States District Court,
E.D. Louisiana.

May 11, 1999.

Lloyd N. Frischhertz, New Orleans, LA, for Jerry L. Miller.

William B. Gibbens, III, Stephanie D. Skinner, G. Deacon Powell, Gelpi, Sullivan, Carroll & Gibbens, New Orleans, LA, for J. Ray McDermott, Inc.

## ORDER AND REASONS

MENTZ, District Judge.

Plaintiff Jerry L. Miller alleges that he was injured while working on a fixed offshore platform located on the Outer Continental Shelf adjacent to Louisiana. Miller alleges that he struck his head on a low-hanging pipe of the platform's Lease Automatic Custody Transfer (LACT) unit.[1] The platform is owned by Marathon Oil Company; it was designed by McDermott, Inc.

Defendant McDermott filed the present motion for summary judgment on the ground that the ten-year peremptory period set forth in Louisiana Revised Statute § 9:2772 bars this action.[2] That statute establishes a ten-year preemptive period for actions based on deficiencies in surveying, design, supervision, or construction of an improvement to an immovable.[3] La. R.S. § 9:2772 provides in pertinent part:

A. No action, whether ex contractu, ex delicto, or otherwise, including, but not limited to, an action for failure to warn, to recover on a contract or to recover damages shall be brought against any person performing or furnishing land surveying services, ... or against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of an improvement to immovable property:

(1) More than ten years after the date of registry in the mortgage office of acceptance of the work by owner; or

(2) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than ten years after the improvement has been thus occupied by the owner.

Because there remain genuine issues of material fact, the court denies the motion.

### Analysis

The party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the summary judgment record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party may also establish its entitlement to summary judgment by showing an absence of evidence supporting the nonmoving party's case. *Id.* The moving party is not required to negate the elements of the nonmoving party's case. *Id.; Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). Once that burden is met, the burden of production shifts to the nonmovant to set forth specific facts in the record showing a genuine issue for trial. *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553. Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Little*, 37 F.3d at 1075. Summary judgment is properly granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In the absence of any proof, the court does not assume that the nonmoving party could or would prove the necessary facts. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d

---

1. The function of a LACT unit is to measure the flow of oil and gas production from the platform.

2. McDermott also denies that it performed any services in connection with the LACT unit, but agrees that its responsibility for any defects in the LACT unit need not be resolved in this motion.

3. Contrary to plaintiff's argument, § 9:2772 clearly applies to persons providing design services and is not limited to land surveying services.

695 (1990). Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists. *See Little*, 37 F.3d at 1075.

There is no dispute that Louisiana law applies in this case through the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq.* Miller opposes McDermott's motion on the ground that the scope of § 9:2772 does not cover the facts in this case. He contends that: (1) McDermott has failed to show that its work was completed more than ten years ago; and (2) the LACT unit is a movable. Discovery of the facts regarding McDermott's work in connection with the platform have been hampered by the passage of eighteen years since McDermott commenced its work.

### A. *Passage of Ten Years*

■ The ten-year preemptive period in § 9:2772 runs from the date of registry in the mortgage office of acceptance of the work by owner; or after the improvement has been occupied by the owner. McDermott submitted evidence that its work designing and engineering Marathon's production platform "commenced in the fall of 1978 and ended in the spring/early summer of 1979," and that it performed no work on the platform after the calendar year 1979. *See* Affidavit of Bobbby G. Gunn, McDermott Project Manager. Miller did not submit any evidence to contradict these facts.

This lawsuit was filed in 1996, more than 17 years after McDermott last performed work on the platform. While there is no evidence as to the date Marathon took possession of the platform, there is no evidence to suggest that it did so more than seven years after McDermott completed its work on the platform. The court cannot hold this issue open on the unlikely possibility that plaintiff might be able to produce some evidence that Marathon waited seven years to take possession of its platform. Accordingly, the court finds as a matter of law that this action was filed after the passage of the ten-year period. *See* Fed.R.Civ.P. 56(d).

### B. *Immovable vs. Movable*

Under Louisiana law, tracts of lands and their component parts are immovables. La. Civ.Code art. 462. A component part of a tract of land is one that is permanently attached to the land and belongs to the owner of the ground. La. Civ.Code art. 463. Things incorporated into an immovable so as to become an integral part of it are its component parts. La. Civ.Code art. 465.

Louisiana Civil Code Article 466 recognizes two separate categories of component parts of buildings or other constructions:

> Things permanently attached to a building or other construction, such as plumbing, heating, cooling, electrical or other installations, are its component parts.

> Things are considered permanently attached if they cannot be removed without substantial damage to themselves or to the immovable to which they are attached.

La. Civ.Code art. 466.

■ The first paragraph of article 466 sets forth an illustrative list of specific things—"plumbing, heating, cooling, electrical or other installations"—that are component parts and are considered permanently attached as a matter of law, regardless of whether their removal would cause damage. *See Equibank v. United States*, 749 F.2d 1176, 1178 (5th Cir.1985). For example, an electric chandelier is an immovable under the first paragraph of article 466 even though it can be removed without damage to itself or the building. *Id.* at 1180.

■ To determine whether an item falls within the first category, the court asks whether "ordinary societal expectations" are that the item is a part of the building. *Id.* at 1178. In the case at bar, the "socie-

tal expectations" are those of the offshore oil and gas production industry. *See Coulter v. Texaco, Inc.*, 117 F.3d 909, 917 (5th Cir.1997). Factors used in this analysis are the temporal permanence of the connection to the building and the degree of expertise required to install or detach the item. *Equibank*, 749 F.2d at 1178; *Coulter*, 117 F.3d at 917; *Moll v. Brown & Root, Inc.*, 1999 WL 155948 *4 (E.D.La. March 19, 1999).

In its second paragraph, article 466 addresses things other than those itemized in the first part. Such things are considered permanently attached and thus component parts if they cannot be removed without substantial damage to themselves or to the immovable to which they are attached. *Id.; see also United States Environmental Protection Agency v. New Orleans Public Service, Inc.*, 826 F.2d 361 (5th Cir.1987).

Courts interpret paragraphs one and two of Article 466 independently. *See, e.g., Moll*, 1999 WL 155948 at *3–4 (citing *Equibank* ); *In re Chase Manhattan Leasing Corp.*, 626 So.2d 433 (La.App. 4th Cir. 1993), *writ denied*, 630 So.2d 797 (La. 1994); *Lakeside National Bank of Lake Charles v. Moreaux*, 576 So.2d 1094 (La. App. 3d Cir.1991); *American Bank & Trust Company v. Shel–Boze, Inc.*, 527 So.2d 1052 (La.App. 1st Cir.1988), *writ denied*, 532 So.2d 155 (La.1988).

■ None of the parties dispute that the platform is an immovable. There is likewise no genuine dispute that the LACT unit belongs to Marathon, the owner of the platform. The parties' dispute lies in whether the LACT unit is a component part of the platform or otherwise permanently attached to the platform.[4]

■ McDermott submitted the affidavit of Bobby Gunn, its project Engineer for the platform. He states that the LACT unit, which measures the amount of oil and gas production, is an essential component of the platform in that it would completely impair the platform's function if it were to be removed. Gunn states that "one building or purchasing an offshore platform would normally expect to find a LACT unit in place on the platform." Gunn also states that the LACT unit is permanently attached and integrated with the platform; it is welded onto the deck and joined with other platform piping.

Miller, who served as Operator of the platform, submitted his own affidavit that LACT units, such as the one at issue, are designed on skids so they can be easily moved from one platform to another in the event characteristics of production change, such as, an increase or decrease in volume or a change from oil to gas.[5]

Both parties admit that removal of the LACT unit would require cutting welds, portions of the deck, and piping, as well as the use of heavy equipment such as a crane and a barge or work boat. Miller states that the removal could be done with "relative ease" and would not require the use of any specialized or skilled labor other than that possessed by the platform personnel.

It is not clear that the cutting of the welds, deck, and piping necessary to remove the LACT unit would constitute substantial physical damage to the platform or the unit itself.

In light of this evidence, the court finds genuine issues of material fact regarding the industry expectations of whether the attachment of the LACT unit is a perpet-

---

4. The court notes that McDermott failed to file a statement of uncontested facts as required by Local Rule 56.1. McDermott referred the court to its prior motion for summary judgment on this issue and the statement of uncontested facts attached to that motion. Even if the court could properly look to this previously filed statement of uncontested facts, which it cannot, the

statement is insufficient because it does not address any facts relevant to the LACT unit's status as an improvement to an immovable.

5. The court did not consider the affidavit of Miller's proposed expert, Robert Borison, because his original affidavit is unsigned.

ual rather than temporary connection to the platform; whether the skill required to remove a LACT unit is considered "specialized" in the industry; and whether removal of the LACT unit would cause substantial physical damage to the platform or the unit.

Accordingly,

IT IS ORDERED that:

(1) McDermott's Motion For Summary Judgment is **DENIED.**

(2) There are no genuine issues of material fact that plaintiff brought this action after the ten-year preemptive period in § 9:2772, and in accordance with Fed. R.Civ.P. 56(d), this fact shall be established at trial.