| ELIZABETH W. MAGNER | * | NO. 2023-CA-0598 |
| AND MICHAEL W. MAGNER | | |
| | * | COURT OF APPEAL |
| VERSUS | | |
| | * | FOURTH CIRCUIT |
| MICHAEL DEAS | | |
| | * | STATE OF LOUISIANA |
| | * | |
| | * | |

\* \* \* \* \* \* \*

**LOBRANO, J., CONCURS IN THE RESULTS AND ASSIGNS REASONS.**

I respectfully concur in the results that the "trial court abused its discretion in denying the motion for new trial" and the "trial court should review and consider, *in pari materia*, the various code articles in Book II of the Louisiana Civil Code in fashioning an equitable remedy."

I write separately to further discuss this Court's decision in *Winingder v. Balmer,* 93-0874 (La. App. 4 Cir. 2/11/94), 632 So.2d 408, wherein the trial court reviewed and considered, *in pari materia*, the legal basis of an Article 670[1] servitude and the vicinage articles[2] in Book II of the Louisiana Civil Code in

---

[1] La. C.C. art. 670 states:

> When a landowner constructs in good faith a building that encroaches on an adjacent estate and the owner of that estate does not complain within a reasonable time after he knew or should have known of the encroachment, or in any event complains only after the construction is substantially completed the court may allow the building to remain. The owner of the building acquires a predial servitude on the land occupied by the building upon payment of compensation for the value of the servitude taken and for any other damage that the neighbor has suffered.

[2] La. C.C. art. 667 states:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. . . .

La. C.C. art. 668 states:

1

fashioning an equitable remedy applying the principles of former Article 21.[3] The

court crafted a long-term resolution between "the Balmers and the Winingders

[who] are destined to remain neighbors" as are the Magners and Deas. *Id.*, 93-

0874, p. 8, 632 So.2d at 413. This Court noted that the trial court "recognized the

wisdom of providing a framework for that destiny that will require the least

possible likelihood of necessitating further resort to the Courts. . . . The trial judge

chose a reasonable width [2.7 feet] for the article 670 servitude, which would allow

access to the Winingders and to those having need to service the Winingder

premises, while alleviating the fire hazard and moisture damage." *Id.* In affirming

the trial court's granting of the servitude for maintenance purposes in the boundary

yard, this Court explained that:

> Professor Yiannopoulos notes that prior to enactment of article 670, a similar result was fashioned judicially by application of the equity provision of Article 21 of the Civil Code. *See*, A.N. Yiannopoulos, supra § 24, footnote 24. The trial judge fashioned a remedy consistent with the equitable background of article 670, to address the unusual situation created by the particular facts of this case, and the effect of such a remedy is strictly limited to those facts. These neighbors have substantial investments of money and of emotional energy in their respective homes; they share a common border, the bounds of which are undisputed, but which because of the position and encroachment of improvements, is and will continue, if unaffected, to remain a source of friction throughout the future. **The trial judge, using the legal basis of the article 670 servitude, and equitable principles of article 21,** recognized the equities favoring Mrs. Balmer by ordering compensation of approximately triple the value she paid for full ownership of the property on which the servitude

---

Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor. . . .

[3] La. C.C. art. 21 (1987)(redesignated), which was entitled "Absence of express law, court's duty to decide equitably," provided: "In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent." The current version of La. C.C. art. 4 now states: "When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages."

was imposed. Mrs. Balmer remains in possession of this strip of property, and remains its owner, subject only to the servitude for which the Winingders are **obliged to pay handsomely**.

*Id.*, 93-0874, p. 7, 632 So.2d at 413 (emphasis added).

This Court affirmed the granting of a servitude of 2.7 feet along the length of the common property line, finding that:

> The encroachment by the Winingder house predates Balmer's acquisition . . . The encroachment appears on the survey of the property and the Winingders' windows and utilities were obvious to any interested observer. Balmer purchased her property with full knowledge of the nature and extent of these encroachments. Uncontroverted evidence was produced at trial that workmen at the Winingder home routinely gained access to the north side of the house by walking through the adjacent property, and neither Balmer nor her ancestor in title complained of this procedure.

*Id.*, 93-0874, p. 8, 632 So.2d at 413.

This Court concluded that:

> Merely to order removal of the offending fence pursuant to article 667 will not calm these turbulent waters. . . . The trial judge chose a reasonable width for the article 670 servitude, which would allow access to the Winingders and to those having need to service the Winingder premises, while alleviating the fire hazard and moisture damage. The trial judge separated the "contending waters" of the Winingder and Balmer "oceans" with a device (the servitude) that operates not unlike the locks in a canal, to prevent the discord and disharmony attendant on the meeting of the oceans.
>
> . . .
>
> The trial court fashioned a remedy consistent with the civilian law of servitudes and particularly designed to eliminate, to the greatest extent possible, the likelihood of future conflict. Under the specific facts of this case, we find that the court was not manifestly erroneous or clearly wrong in granting a servitude herein, and affirm the judgment of the trial court.

*Id.*, 93-0874, pp. 7, 12, 632 So.2d at 413, 416.

In its reasons for judgment in the case *sub judice*, the trial court found that the parties did not dispute the issue of encroachments; thus, this issue was not

3

considered by the court.  In Deas' brief, the encroachment issue was discussed when Deas implied that the granting of a servitude as requested by the Magners would oblige them to pay handsomely:

> While the Magners fussily assert doctrinal support for their absurd notions of equitable entitlement they ignore the logical conclusions of the very cases they have cited in their "Verified Petition", and in their brief, as analogues for the resolution of this case, Lakeside National Bank v. Moreaux, 576 So. 2d 1094 (La. App. 3rd Cir. 1991) and Bushnell v. Artis, 445 So. 2d 152 (La. App. 3rd Cir. 1984).
>
> Both Bushnell and Moreaux dealt with *encroachments* on an adjoining property and were decided by the application of La. Civil Code Art. 670, which expressly empowers a court to allow an encroaching building to remain in place and its owner to acquire, by operation of law and not judicial pronouncement, "…a predial servitude on the land occupied by the [encroaching] building *upon payment of compensation for the value of the servitude taken and for any other damage that the neighbor has suffered.*" (emphasis added).
>
> The Magners end their analogizing before grappling with this language of La C. C. Art. 670, no doubt because of the more than $5,500 of economic discomfort it would cause them.

(Emphasis in original).

A photograph of the boundary yard in question, attached as Appendix A, depicts various potential *Winingder* "encroachments," including the extensions of railings and pipes on the wall onto the Deas property, Deas' aluminum structure touching or near the Magner house, Deas' air conditioners installed close to the old brick adjoining wall, and greenery and weed growth along the wall. These aspects of the boundary yard may over time due to cumulative moisture and condensation, and vegetation growth, require the Magners to have regular maintenance to the adjoining wall, especially considering the historic and architectural significance of this French Quarter boundary yard and adjoining wall.

4

In order for the trial court to fashion a long-term resolution in this case, a review of the reasonableness of the neighbors' use and nature of the property, including any *Winingder* "encroachments," is necessary. Given that both parties have improvements located in the boundary yard, there is an inherent shared responsibility to address these issues in a manner that respects the rights and convenience of both parties. If an amicable resolution of this conflict between neighbors cannot be obtained in a private agreement and if a long-term solution is not sought, then the parties will continue to appear before the courts, draining their resources and the courts. The resolution of this neighbor dispute by either the trial court or the parties must address not only the immediate issue at hand but also their future shared circumstances recognizing the responsibilities and potential liabilities and compensation owed by both neighbors.

Appendix A

