liMARCUS, Justice.*
This suit involves a request for a refund of sales taxes paid by Kean’s Partnership d/b/a Red Stick Linen Services (Red Stick) to the City of Baton Rouge and Parish of East Baton Rouge (city/parish) on purchases of textile products for the period of January 1, 1985 to July 31,1986.
In the course of its business, Red Stick purchased textile products such as uniforms and other linens for its customers. Red Stick entered into service agreements for a three to five year period (the useful life of the products) whereby it would provide periodic pickup, laundering, mending and delivery of the textile products to its customers. Each uniform was customized with the logo of the customer and tailored to fit the customer’s employees. If an agreement was breached or canceled, the products reverted to Red Stick. From January 1, 1985, through July 31, 1986, Red Stick paid sales taxes on these purchases to the city/parish in the amount of $115,782.81 pursuant to city/parish ordinances nos. 7713, 7714, 7715, 7716, 8046, 8047, 8048 and 8049 promulgated by the Metropolitan Council for the tax years of 1985 and 1986. Section 1(e) of each of these ordinances defining the term “sale at retail” tracked verbatim the language of La. R.S. 47:301(10)(a) of the Estate sales tax statute.[1] Both the state statute and the city/parish ordinances define a sale at retail as a sale to a consumer for any purpose other than resale- — sales made for the purpose of resale by definition are not subject to these sales taxes.
The State of Louisiana, Department of Revenue and Taxation (the Department) initially assessed Red Stick for state sales taxes on the same textile purchases. Red Stick appealed for a redetermination of the assessment for the period of January 1, 1983 through July 31, 1986 alleging that the Secretary of the Department failed to follow Article 2-82 of the Louisiana Department of Revenue Sales and Use Tax Regulations which exempts textile purchases made for service contracts as sales for resale. Article 2-82, as amended effective March 1, 1964, provided in pertinent part:
[Sjales of garments, covers, wipers, towels, and linens to such establishments for furnishing to their customers under them service contracts, whereby all laundering of such articles is to be done by the establishments furnishing such linens shall also be considered sales for resale and, as such may be affected under an exemption certificate.
The Department canceled its assessment against Red Stick finding that the acquisitions of textile products by Red Stick were sales for resale under Article 2-82 which article was in full force and effect at the time of the purchases at issue.[2]
Red Stick filed a claim with the city/parish for refund of sales and use taxes paid for the period of January 1, 1985 to July |331, 1986. The Director of Finance (Director) audited Red Stick’s records and granted a partial refund of $9,345.60 but denied the remainder of the claim in the amount of $106,437.21.
Red Stick filed suit in the district court seeking a refund of the $106,437.21 paid in city/parish sales taxes. Red Stick and the city/parish filed opposing motions for summary judgment. Red Stick maintained that the city/parish was obligated to collect taxes in the same manner as the state and therefore is bound to follow Article 2-82 and re *1045 fund the taxes. In support of its contention that Article 2-82 was viable and applicable to the city/parish, Red Stick relied upon a district court decision which reached this conclusion. The city/parish argued that Article 2-82 had not been properly promulgated, had been repealed by implication, and in any event, the city/parish was not bound to collect taxes in the same manner as the Department nor was it bound by the interpretation and application given to state taxing statutes by the Department. The trial judge rendered judgment in favor of the city/parish dismissing Red Stick’s claim for a refund.
The court of appeal reversed the grant of summary judgment in favor of the city/parish. First, it held that the city/parish must give the same interpretation to its taxing ordinances as the state gives to its taxing statutes when the city/parish chooses to adopt a tax ordinance which tracks the language of the state statute. However, it found that Red Stick had not produced adequate evidence to establish that Article 2-82 was in full force and effect during the relevant time period because the article did not appear in the current regulations of the Department and the copy of the article submitted with Red Stick’s refund petition was not a certified copy. Last, the court of appeal found that there were issues of fact as to whether the purchases at issue should be considered sales for resale without a review of the invoices. It remanded the ease to the trial court for further proceedings.[3]
After trial on the merits the trial judge found that Article [42 — 82 was in full force and effect during the relevant time period and that the purchases were exempt from taxation and rendered judgment in favor of Red Stick and against the city/parish in the amount of $106,427.21 with interest.
The city/parish appealed. The court of appeal found that a genuine issue of law existed as to the validity of Article 2-82 and its effect upon the taxing authority of the city/parish. It concluded that the existence of a question of law precluded it from reviewing the Director’s decision to deny a refund. It reversed the judgment of the trial court and dismissed the suit.[4] Upon application by Red Stick, we granted certiorari to review the correctness of this decision.[5]

DISCUSSION

La. Const. Art. 7, § 3 states that the legislature must provide a “complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer.” Section 14(a) of the city/parish ordinances provides a right of action to an aggrieved taxpayer or dealer to pay the amount found due by the Director of Finance and then give notice at the time of payment of the intention to file suit for the recovery of the same. The Director shall then segregate the amount so paid for thirty days and if suit is filed for recovery of the amount, the funds so segregated shall be held pending outcome of the suit. This right of action is often referred to as the “payment under protest” procedure. It is similar to the right of action found in our state taxing statute, La. R.S. 47:1576. Red Stick did not avail itself of the payment under protest procedure set forth in Section 14(a). Instead, Red Stick filed a claim for a refund of sales taxes paid for the eighteen month period at issue. The city/parish argued that a voluntary payment is refundable only if no question of fact or law is involved and the payment was made due to a mistake of fact or |5Iaw on the part of the taxpayer. The city/parish relied upon Section 26 of the same ordinances which provides:
That where no question of fact or law is involved, and it appears from the records of the City (Parish) that any monies have been erroneously or illegally collected from any dealer, or have been paid by any dealer under a mistake of fact or law, the Director of Finance may, at any time within three (3) years from December 31 of the year in which the tax became due or within one (1) year from the date the tax was paid, whichever, is later, upon making a *1046 record in writing of his reasons therefore, certify that any dealer is entitled to such refund, and thereupon, the Director of Finance shall authorize the payment thereof from the current year revenues. No claim for refund shall be allowed after a lapse of said three (3) year or one (1) year period.
Under the city/parish’s interpretation of Section 26, the Director is compelled to grant a refund only when there is no question of fact or law involved. The city/parish contends that there is an issue of law as to the viability and applicability of Article 2-82 to the city/parish sales taxes and the denial of a refund to Red Stick was made on that basis. The city/parish argues that payment under protest is a predicate to a review of the Director’s decision to deny a refund of taxes paid where a question of law or fact exists. Therefore, since Red Stick did not pay the taxes under protest, and since a question of law existed as to the validity of an exemption from taxation under Section 26, it is within the Director’s discretion whether or not to grant a refund of the sales taxes. We agree.
Under Section 26, when no question of fact or law exists and the taxes have been paid under a mistake of fact or law, then the Director “shall authorize the payment thereof,” that is, he must refund the tax. However, when the Director determines that there is a question of fact or law, then it is within the discretion of the Director to grant or deny a refund. Unlike the remedy provided pursuant to Section 14(a), there is no judicial recourse provided in Section 26 for review of the Director’s decision. Therefore, when a taxpayer voluntarily pays the sales taxes (not under protest) and then files a claim for a refund with the Director, and 16if the Director determines that no refund was owed because there is a genuine issue of fact or law, then the only relief the taxpayer is afforded is judicial review of the Director’s determination that there existed a genuine legal or factual controversy over whether the taxes were owed. If we were to decide that judicial review is available to the taxpayer regardless of the existence of a question of fact or law, the payment under protest requirements in local ordinances would be rendered meaningless and the local governing authorities would be subject to claims for refunds without having segregated the funds therefor. Reading Section 14(a) and Section 26 in pari materia, we conclude that judicial review of a tax issue is guaranteed only when the taxpayer avails himself of the payment under protest procedure or where “no question of fact or law is involved.” Hence, the only issue before us is whether the Director correctly found the existence of a question of law, that is, whether Article 2-82 was viable and applicable to exempt from assessment the purchases at issue. For the reasons set forth below, we conclude that there was sufficient evidence upon which to find that a question of law existed regarding the validity of Article 2-82 and its effect upon the city/parish assessment of sales taxes during 1985-1986.
First, we find sufficient controversy as to whether Article 2-82 was properly promulgated. The parties stipulated at trial that the Department could not produce the original or a certified copy of Article 2-82 and could not attest to its origin. A copy of the article was introduced into evidence by Robert Roland, an employee of the Department from 1949 to 1960 and former Collector of Revenue from 1958 to 1960. He testified that Article 2-82 was promulgated in 1964 pursuant to La. R.S. 47:1511. Mr. Roland testified that he personally recognized the signature that appeared on the document as that of the Collector of Revenue in 1964, Roland Cocreham, now deceased. No evidence was produced at trial to establish that the article was published in the official journal at least three times ^during a period of ten days as required under La. R.S. 47:1511.[6]
The city/parish argues that the article was without affect or implicitly repealed when it was not included in the 1973, 1979 (and 1986 supplement) publications of the Department of Revenue’s Sales Tax Law and Regulations., While these publications are silent as *1047 to whether regulations formerly promulgated but not contained therein were rescinded, they do state in the introductions that the information contained therein is current through the 1973, 1978 and 1985 sessions of the Louisiana legislature respectively. Red Stick argues that the absence of Article 2-82 in these publications does not render the article null or effect its repeal in the absence of some positive act of repeal.
The city/parish also argues that Article 2-82 was invalid because it was never- adopted in accordance with the Administrative Procedure Act (APA), La. R.S. 49:950 et seq. The APA as enacted by La. Acts 1966, No. 382, § 1 specifically excluded the Department of Revenue from the definition of “agency” so that the Department was not bound to follow the act’s procedures for adoption of agency rules. However, by La. Acts 1974, No. 284, § 1 the definition of agency was rewritten to delete the Department from exclusion of the definition of agency. La. R.S. 49:954(A) of the APA provides that all rules, in order to be effective, must be filed with the Department of the State Register. No evidence was presented by Red Stick to show that Article 2-82 was filed with the Department of the State Register until 1987. Therefore, the city/parish argues that Article 2-82 was repealed by implication along with all of the Department’s rules and regulations when the Department failed to comply with the formalities of the APA. Red Stick argues that such an interpretation would mean that all of the Department’s rules and regulations were without effect and it would lead to the absurd result that the Department was without rules and regulations for 18over twelve years. Red Stick further argues that the adoption of the APA was not intended to supersede the rights and remedies already in existence under other administrative acts such as those of the Department.
Last, Red Stick argues that the Metro Council must follow the state’s interpretation of its sales tax statutes when interpreting its own ordinances, particularly in defining “sale at resale” because the Metro Council adopted the language of its ordinances verbatim from the state statute on the same subject. The state’s position was that Article 2-82 was in effect as evidenced by a letter of Jo Ann Brown, a representative of the Department, who issued a letter to Bossier City to that effect in March of 1984. George Marretta, the Director of Finance, testified that the city/parish had no knowledge of the existence of Article 2-82. The city/parish contends that it is not bound by the Department’s administrative interpretation when it is contrary to or inconsistent with its own practices. The city/parish argues that the Department was not following its own regulation in that it was assessing Red Stick and other companies for sales taxes during this period until the companies began to challenge the assessment.
In sum, we find that the Director of Finance was presented with questions of law. He was presented with the issue of whether Article 2-82 was properly promulgated, whether it continued to exist or whether it was repealed by implication, and whether he was bound to follow the Department’s interpretation of the article under the circumstances of this ease. In view of these existing questions of law, the Director exercised his discretion and denied Red Stick a refund. Hence, Red Stick is precluded from seeking judicial recourse from the denial of a refund when it did not pay the taxes under protest. Accordingly, the court of appeal was correct in reversing the trial court’s judgment granting Red Stick a refund of the sales taxes at issue.

DECREE

For the reasons assigned the judgment of the court of appeal is affirmed. All costs are assessed against Red Stick.
LEMMON, J., concurs and assigns reasons.

 Bleich, J., not on panel. Rule IV, Part 2, § 3.

. La. R.S. 47:301(10)(a) provides:
"Retail sale”, or "sale at retail”, means a sale to a consumer or to any other person for any purpose other than for resale in the form of tangible personal property, and shall mean and include all such transactions as the collector, upon investigation, finds to be in lieu of sales; provided that sales for resale must be made in strict compliance with the rules and regulations. Any dealer making a sale for resale, which is not in strict compliance with the rules and regulations, shall himself be liable for and pay the tax.

. B.T.A. Docket No. 3250 (Bd. Tax App. March 14, 1989).

. 91-CA-1999 (La.App. 1st Cir. 2/8/93)(nol for publication).

. 95-1054 (La.App. 1st Cir. 2/23/96); 668 So.2d 1343.

.96-0751 (La.5/31/96); 673 So.2d 1022.

. La. R.S. 47:1511 provides in pertinent part: "Any such rules and regulations may be promulgated by making a copy thereof available for inspection at the office of the collector at his official domicile in Baton Rouge, Louisiana, and by publishing a notice to that effect in the official state journal at least three times during a period of ten days."